## Johnson Estate

*Charles P. Zerbe* and *C. Leo Sutton*, for accountants.

*John F. Solomon, Henderson, Wetherill and O'Hey, John W. Fawcett, 3rd*, and *Montgomery, McCracken, Walker and Rhoads*, contra.

*Thomas E. Waters*, guardian and trustee ad litem.

TAXIS, P. J., September 13, 1965.—The reason or purpose for the filing of the account is the death on December 19, 1964, of John D. Johnson, Jr., son of decedent, who was a cotrustee and also an income beneficiary. The trust was created by item third of

testator's will, which set up certain quarter-annual annuities, and then directed that the balance of income be paid to testator's children and the issue of his deceased children living at each quarterly distribution date, per stirpes. The trust continues until the death of all of testator's children, grandchildren and great-grandchildren living at the time of his death. . . .

The most troublesome problem in this case occurs by virtue of the proposal of the surviving trustees to petition for the appointment of the First Pennsylvania Banking and Trust Company to be a cotrustee. Such appointment, to take effect immediately after the confirmation of this account, is opposed by Neil J. Sinclair, a grandson of decedent on behalf of himself and his children, the latter of whom have contingent interests in both income and the remainder, depending upon the order and time of death of the holders of prior interests.

Testator made detailed provisions in his will concerning the appointment of his original trustees and their successors. In item third (G), he provided as follows:

"I nominate my two sons, John D. Johnson, Jr. and T. Arthur Johnson, and my two friends, John H. Franz, of Mt. Holly, New Jersey, and Harold Strange, of Philadelphia, Pennsylvania, and the survivors of them to be the trustees hereunder . . . I direct that my said two sons (or the survivor of them), while acting as trustees, shall have the right, by executing a written direction to that end duly signed by them or by one of them, (should only one be then acting as trustee), to nominate as the successor of both as trustee hereunder, a trust company, which shall be a sound, well-managed trust company situate and doing business either in New Jersey or in Pennsylvania, and which company shall succeed the survivor of them as successor trustee hereunder. Should my said two sons

(or the survivor) fail so to nominate their successor trustee as aforesaid, then (when both said sons shall have ceased to act as trustees hereunder) said Franz and said Strange (or the survivor of them) immediately shall agree upon and select, by a writing signed by them, a trust company of the same sort to act as trustee hereunder with them and the survivor of them. Furthermore, said Franz and said Strange shall execute an instrument signed by them by which each of them shall nominate one individual to act as his own successor trustee hereunder, when they shall have ceased to act in that capacity. These two successor trustees who thus shall succeed said Franz and said Strange by a writing duly signed by both of them together shall nominate one individual to succeed themselves as trustee hereunder, when both of said successor trustees shall have ceased to act in that capacity. For it is my purpose, and I order and direct that eventually (after the four original trustees and the first successor trustees to two of those four shall have ceased to act as trustees hereunder) there shall be at all times to act as successor trustees hereunder, one individual and one trust company, and if at any time there shall be a vacancy in the office of either type of trustee hereunder, then the three oldest individuals who at the time shall be in receipt of income from said trust may select (either unanimously or by a majority thereof) and nominate in writing a successor individual trustee to act in that capacity and/or a successor corporate trustee to act in that capacity. So long as either one of my said two sons shall act as trustee hereunder there need be no corporate trustee. . . ."

John D. Johnson, Jr., did not make or join in any written designation of a corporate trustee prior to his death. In addition, John H. Franz, who still survives, has resigned as cotrustee, such resignation to take effect upon the confirmation of the present account.

Although so empowered under the above language in decedent's will, Mr. Franz is not designating any individual to fill the vacancy caused by his resignation. All three living cotrustees, however, join in the proposal to appoint the First Pennsylvania Banking and Trust Company as cotrustee.

In addition to the above, in item fourth, testator directed that his sons should receive no compensation as executors or trustees, and that the compensation to be paid to the other two trustees for serving as such should not exceed $5,000 per year, or three percent on income, whichever was less. The present income of the trust is approximately $75,000 per year. Under the above proposal, trustee Harold Strange would continue to receive one and one-half percent on income received, as in the past, but the First Pennsylvania Banking and Trust Company is willing to serve as cotrustee only on the basis of its existing fee schedule. As presently constituted, this would give it annual compensation of approximately $4,800, over and above the amounts received by Mr. Strange. It is evident, therefore, that total compensation under these circumstances would exceed the limit imposed by testator.

Several practical reasons have been advanced by accountants and by the guardian and trustee ad litem for the immediate appointment of a corporate trustee. First, it would remove the necessity for the estate to pay office and safe deposit box rent, both of which would, in effect, be provided by the corporate trustee in the normal course of its duties. Further, it is stated that the trust has shown a considerable increase in value and in complexity since its initiation, and that therefore a corporate trustee, again as part of its service, would provide valuable financial and investment advice, and would give closer attention in general to administrative detail than the individual trustees could supply. In addition, it is noted that under item fourth

of his will, testator excused only his executors and original trustees from posting security, so that if a successor individual trustee takes office without the automatic provision of security furnished by a corporate trustee, the estate will be burdened with premiums and other costs of furnishing security for its fiduciaries.

Clearly, the death of John D. Johnson, Jr., has created a vacancy in the trustees. In addition, the resignation of John H. Franz without naming an individual as his successor creates another vacancy which no reasonable construction of the language in the will provides for. Under such circumstances, section 901 of the Fiduciaries Act of April 18, 1949, P. L. 512, is designed to permit the court to ". . . appoint a trustee to fill a vacancy in the office of trustee, subject to the provisions, if any, of the trust instrument". The issue before me, then, is simply whether the language of the will prevents the proposed appointment.

In Trimble Estate, 383 Pa. 443, 446, the Supreme Court held that ". . . full effect must be given to the intent of the testator as expressed in the words of his will, and the power granted being that of the named trustees to appoint their successors, it will be strictly construed".

In Frank Trust, 400 Pa. 614, 620, the same conclusion was reached, and the court said, "That [these] settlors had the right to select the manner in which a corporate successor trustee should be chosen is clear". In the latter case, the court held that a power to appoint successors lodged in three individual trustees, which could be exercised "whenever said individuals might . . . demand the resignation of the . . ." corporate cotrustee, should be construed to include the situation where the corporate trustee was legally mandated to resign because of its insolvency. The rule to be applied, therefore, is one of a strict but not a super-

technical interpretation of the applicable language. The ultimate objective, as always, is a reasonable determination of testator's intent.

In my opinion, these cases and testator's language present an insurmountable obstacle to the action which has been proposed. As to the vacancy caused by the death of John D. Johnson, Jr., this clearly is to be filled only after the death or resignation of T. Arthur Johnson. Only where both sons or their survivor fail to nominate a successor corporate trustee, and only when both of the sons cease to act as trustees, may Franz and Strange, or their survivor or successor, select a corporate trustee. While language later in item third (G) is somewhat less positive ("so long as either one of my said two sons shall act as trustee hereunder there *need* be no corporate trustee"), it is only slightly so, and creates no substantial doubt as to testator's basic intent.

Likewise, the resignation of Mr. Franz also creates a vacancy, but the will expressly requires that this be filled by an individual. No alternative is provided by testator where either of the "friend" trustees fails to nominate an individual successor, but this does not change testator's clear direction that the right of Franz to name a successor is limited to an individual, which renders his proposed nomination of a corporate trustee of no effect. Likewise, the appointment of a corporate trustee by this court to fill this vacancy would directly contravene the instructions of the testator. Since T. Arthur Johnson and Harold Strange will continue to serve as trustee, and since no proposal to replace Mr. Franz by an individual is before me, no additional trustees can be appointed at this time.

Testator plainly conceived of the possibility that a vacancy might occur in the offices of either the individual or the corporate trustee when his ultimate plan of having one of each came to fruition; in order to

cover this situation, he gave the right to the three oldest income beneficiaries at that time to select a successor trustee to either. Thus, the eventual desire of testator to have one individual and one corporate trustee is certain to be accomplished, whether or not the various individuals appointed by him or their successors follow his instructions precisely.

The practical advantages giving rise to the present request are of course, appreciated by the court. For the present, however, and until it becomes legally permissible to appoint a corporate trustee, such advantages may be achieved to a great extent by the individual trustees nevertheless, though perhaps not at precisely the same cost. Testator anticipated that his trustees might need expertise other than their own in managing the trust, for in item third (G) (f) of his will he stated, "In managing and caring for this trust estate, said trustees may employ such agents, consultants and attorneys as they deem reasonably necessary, and the cost thereof shall be a proper charge against income". . . .

AND NOW, September 13, 1965, this adjudication is confirmed nisi.